Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID JOHNSON, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| NORTONLIFELOCK INC., SUSAN BARSAMIAN, ERIC K. BRANDT, FRANK E. DANGEARD, NORA DENZEL, PETER A. FELD, KENNETH HAO, EMILY HEATH, VINCENT PILETTE, and SHERRESE SMITH, | |
| Defendants. | |

Plaintiff David Johnson ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against NortonLifeLock Inc. ("Norton" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in

1

connection with the proposed merger of Norton and Avast plc ("Avast"), pursuant to which Norton will acquire all of the issued and to be issued ordinary shares of Avast for: (i) $7.61 in cash and 0.0302 of a newly issued share of Norton common stock for each Avast share (the "Majority Cash Option"); or (ii) $2.37 in cash and 0.1937 of a newly issued share of Norton common stock for each Avast share (the "Majority Stock Option", and the merger between Avast and Norton, the "Proposed Transaction").

2. Upon closing of the Proposed Transaction, Norton shareholders will hold, in the aggregate, between approximately 74% and 86% of the combined company.

3. On October 4, 2021, Defendants caused to be filed with the SEC a Definitive Proxy Statement (the "Proxy Statement") under Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

4. The Proxy Statement, which recommends that Norton shareholders vote in favor of, among other things, the issuance of Norton common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (1) Norton's and Avast's financial projections; (2) the financial analyses performed by Norton's financial advisor, Evercore Group L.L.C. ("Evercore"), in connection with its fairness opinion; and (3) potential conflicts of interest involving Company insiders.

5. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated November 4, 2021 shareholder vote on the Stock Issuance.

**JURISDICTION AND VENUE**

6. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.

9. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

10. Plaintiff is, and has been at all relevant times hereto, an owner of Norton common stock.

11. Defendant Norton provides cyber safety solutions for consumers worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "NLOK."

12. Defendant Susan "Sue" Barsamian ("Barsamian") is a director of the Company.

13. Defendant Eric K. Brandt ("Brandt") is a director of the Company.

3

14. Defendant Frank E. Dangeard ("Dangeard") is Chairman of the Board of the Company.

15. Defendant Nora Denzel ("Denzel") is a director of the Company.

16. Defendant Peter A. Feld ("Feld") is a director of the Company.

17. Defendant Kenneth Hao ("Hao") is a director of the Company.

18. Defendant Emily Heath ("Heath") is a director of the Company.

19. Defendant Vincent Pilette ("Pilette") is Chief Executive Officer ("CEO") and a director of the Company.

20. Defendant Sherrese Smith ("Smith") is a director of the Company.

21. Defendants Barsamian, Brandt, Dangeard, Denzel, Feld, Hao, Heath, Pilette, and Smith are collectively referred to herein as the "Individual Defendants."

22. Defendants Norton and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

23. On August 10, 2021, Norton and Avast announced that they had entered into a merger agreement pursuant to which Avast shareholders would be entitled to receive a combination of cash and newly issued Norton stock with alternative consideration elections available. The press release announcing the Proposed Transaction states, in pertinent part:

**NortonLifeLock and Avast to Merge to Lead the Transformation of Consumer Cyber Safety**

*New Company to Serve 500M+ Users Including ~40M Direct Customers*

August 10, 2021 04:34 PM Eastern Daylight Time

4

TEMPE, Ariz. & PRAGUE & LONDON--(BUSINESS WIRE)--NortonLifeLock (NASDAQ: NLOK), a global leader in consumer Cyber Safety, and Avast (LSE: AVST), a global leader in digital security and privacy, are pleased to announce that they have reached agreement on the terms of a recommended merger of Avast with NortonLifeLock, in the form of a recommended offer by NortonLifeLock, for the entire issued and to be issued ordinary share capital of Avast.

Under the terms of the merger Avast shareholders will be entitled to receive a combination of cash consideration and newly issued shares in NortonLifeLock with alternative consideration elections available. Based on NortonLifeLock's closing share price of USD 27.20 on July 13, 2021 (being the last trading day for NortonLifeLock shares before market speculation began in relation to the merger on July 14, 2021, resulting in the commencement of the offer period), the merger values Avast's entire issued and to be issued ordinary share capital between approximately USD 8.1B and USD 8.6B, depending on Avast shareholders' elections.

The boards of NortonLifeLock and Avast believe that the merger has compelling strategic and financial rationale and represents an attractive opportunity to create a new, industry-leading consumer Cyber Safety business, leveraging the established brands, technology and innovation of both groups to deliver substantial benefits to consumers, shareholders, and other stakeholders.

"This transaction is a huge step forward for consumer Cyber Safety and will ultimately enable us to achieve our vision to protect and empower people to live their digital lives safely," said Vincent Pilette, Chief Executive Officer of NortonLifeLock. "With this combination, we can strengthen our Cyber Safety platform and make it available to more than 500 million users. We will also have the ability to further accelerate innovation to transform Cyber Safety."

"At a time when global cyber threats are growing, yet cyber safety penetration remains very low, together with NortonLifeLock, we will be able to accelerate our shared vision of providing holistic cyber protection for consumers around the globe," said Ondřej Vlček, Chief Executive Officer of Avast. "Our talented teams will have better opportunities to innovate and develop enhanced solutions and services, with improved capabilities from access to superior data insights. Through our well-established brands, greater geographic diversification and access to a larger global user base, the combined businesses will be poised to access the significant growth opportunity that exists worldwide."

**Strategic and Financial Benefits**

- **Accelerates the transformation** of consumer Cyber Safety with over 500 million users;

- Combines Avast's strength in privacy and NortonLifeLock's strength in identity, creating **a broad and complementary product portfolio**, beyond core security and towards adjacent trust-based solutions;

- **Strengthens geographic diversification** and facilitates expansion into the SOHO / VSB segments;

- Unlocks **significant value creation** through approximately USD 280 million of annual gross cost synergies[1], with additional upside potential from new reinvestment capacity for **innovation and growth**;

- Brings together two strong and highly experienced **consumer-focused** management teams.

The Merger will also enhance the financial profile of the combined company through increased scale, long-term growth, cost synergies with reinvestment capacity and strong cash flow generation supported by a resilient balance sheet, and is expected to drive double-digit EPS accretion within the first full year following completion of the Merger and double-digit revenue growth in the long-term.

**Organization and Management**

Following the completion of the transaction, NortonLifeLock's CEO, Vincent Pilette, will remain CEO, NortonLifeLock's CFO, Natalie Derse, will remain CFO, and Avast's CEO, Ondřej Vlček, is expected to join NortonLifeLock as President and become a member of the NortonLifeLock Board of Directors. In addition, Pavel Baudiš, a co-founder and current director of Avast, is expected to join the NortonLifeLock Board as an independent director.

On completion of the merger, the combined company will be dual headquartered in Prague, Czech Republic, and Tempe, Arizona, USA, and will have a significant presence in the Czech Republic. The combined company will be listed on NASDAQ.

**Transaction Details**

For specific details of the proposed transaction please visit our transaction microsite.

*   *   *

**Advisors**
Evercore is serving as financial advisor to NortonLifeLock and Kirkland & Ellis LLP and Macfarlanes LLP are serving as its legal advisors. UBS and J.P. Morgan Cazenove are serving as financial advisors to Avast and White & Case LLP is serving as its legal advisor.

**About NortonLifeLock Inc.**

6

NortonLifeLock Inc. (NASDAQ: NLOK) is a global leader in consumer Cyber Safety, protecting and empowering people to live their digital lives safely. We are the consumer's trusted ally in an increasingly complex and connected world. Learn more about how we're transforming Cyber Safety at www.nortonlifelock.com.

**About Avast**

Avast (LSE:AVST), a FTSE 100 company, is a global leader in digital security and privacy products. With over 435 million users online, Avast offers products under the Avast and AVG brands that protect people from threats on the internet and the evolving IoT threat landscape. The company's threat detection network is among the most advanced in the world, using machine learning and artificial intelligence technologies to detect and stop threats in real time. Avast digital security products for Mobile, PC or Mac are top-ranked and certified by VB100, AV-Comparatives, AV-Test, SE Labs and others. Avast is a member of Coalition Against Stalkerware, No More Ransom and Internet Watch Foundation. Visit: www.avast.com

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

24. The Proxy Statement omits and/or misrepresents material information concerning: (1) Norton's and Avast's financial projections; (2) the financial analyses performed by Norton's financial advisor, Evercore, in connection with its fairness opinion; and (3) potential conflicts of interest involving Company insiders.

25. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Certain Unaudited Prospective Financial Information; (ii) Reasons for the Merger; (iii) Recommendation of NortonLifeLock's Board of Directors; (iv) Opinion of Evercore — Financial Advisor to NortonLifeLock; and (v) Background of the Merger.

26. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated November 4, 2021 shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek damages resulting from Defendants'

7

misconduct.

### 1. Material Omissions Concerning Norton's and Avast's Financial Projections

27. The Proxy Statement omits material information concerning Norton's and Avast's financial projections.

28. With respect to the "NortonLifeLock Consensus Financial Projections," the Proxy Statement fails to disclose: (1) all line items used to calculate (i) Revenue, (ii) Adjusted EBITDA, (iii) Adjusted Net Income, and (iv) Adjusted Unlevered Free Cash Flow; and (2) a reconciliation of all Non-GAAP to GAAP financial metrics.

29. With respect to the "Avast Consensus Financial Projections," the Proxy Statement fails to disclose: (1) all line items used to calculate (i) Revenue, (ii) Adjusted EBITDA, (iii) Adjusted Net Income, and (iv) Adjusted Unlevered Free Cash Flow; and (2) a reconciliation of all Non-GAAP to GAAP financial metrics.

30. The disclosure of the aforementioned projected financial information is material because it would provide Norton shareholders with a basis to project the future financial performance of Norton and the combined company and would allow shareholders to better understand the financial analyses performed by Norton's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Norton and its financial advisor, Norton shareholders are unable to determine how much weight, if any, to place on the Company's advisor's fairness opinion in determining whether to vote for or against the Stock Issuance.

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Evercore's Financial Analyses

32. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning Evercore's financial analyses.

33. With respect to Evercore's "*Selected Publicly Traded Companies Analysis*" for Avast and Norton, the Proxy Statement fails to disclose the individual multiples and financial metrics of each company utilized by Evercore in its analyses.

34. The Proxy Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis*" for Avast and Norton: (1) all line items underlying the unlevered, after-tax free cash flows of Avast and Norton, respectively; (2) the individual inputs and assumptions underlying the (i) perpetuity growth rates, (ii) discount rates, and (iii) terminal year EBITDA multiples; (3) Avast's and Norton's net debt; and (4) the number of fully diluted shares of Avast and Norton.

35. With respect to Evercore's "*Equity Research Analyst Price Targets*" analysis, the Proxy Statement fails to disclose: (1) the individual price targets observed by Evercore in its analysis; and (2) the sources thereof.

36. With respect to Evercore's "*Premiums Paid Analysis*," the Proxy Statement fails to disclose the transactions Evercore analyzed, the individual premiums paid therein, and Evercore's specific rationale for applying reference ranges of 30% to 50% and from 20% to 30%.

37. The valuation methods, underlying assumptions, and key inputs used by Evercore in rendering its purported fairness opinion must be fairly disclosed to Norton shareholders. The description of Evercore's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Norton shareholders are unable to fully understand Evercore's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in

determining whether to vote for or against the Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving the Company's Insiders

38. The Proxy Statement omits material information concerning potential conflicts of interest involving the Company's insiders.

39. The Proxy Statement provides that Norton and Avast managements had discussions between June and August 2021 concerning "board composition and leadership of the combined company[.]"

40. Further, the press release announcing the Proposed Transaction disclosed that Defendant Pilette will remain as CEO of the combined company after the merger closes while Avast's CEO is expected to become President and a director of Norton, and an Avast co-founder is also expected to join Norton's board. The press release states, in pertinent part:

> Following the completion of the transaction, NortonLifeLock's CEO, Vincent Pilette, will remain CEO, NortonLifeLock's CFO, Natalie Derse, will remain CFO, and Avast's CEO, Ondřej Vlček, is expected to join NortonLifeLock as President and become a member of the NortonLifeLock Board of Directors. In addition, Pavel Baudiš, a co-founder and current director of Avast, is expected to join the NortonLifeLock Board as an independent director.

41. The Proxy Statement, however, fails to disclose the details of all employment-related discussions and negotiations that occurred between Norton's and Avast's executive officers and directors, including the parties to such communications, when they occurred, and the content discussed/communicated.

42. The Proxy Statement further fails to disclose whether any prior proposals or indications of interest discussed management retention or board membership in the combined company.

43. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

44. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

47. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

48. The false and misleading statements and omissions in the Proxy Statement are

material in that a reasonable shareholder would consider them important in deciding how to vote on the Stock Issuance.

49. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the

Company which were or had become materially false or misleading.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 17, 2021            Respectfully submitted,

                                       **HALPER SADEH LLP**

                                       By: /s/ Daniel Sadeh
                                       Daniel Sadeh, Esq.
                                       Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                       667 Madison Avenue, 5th Floor
                                       New York, NY 10065
                                       Telephone: (212) 763-0060
                                       Facsimile: (646) 776-2600
                                       Email: sadeh@halpersadeh.com
                                                       zhalper@halpersadeh.com

*Counsel for Plaintiff*

15